**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PANDORA DISTRIBUTION, LLC, | ) | Case No.  3:12-cv-02858 |
| | ) | |
| Plaintiff, | ) | Judge Jeffrey J. Helmick |
| | ) | |
| v. | ) | |
| | ) | |
| OTTAWA OH, LLC, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST AMERICAN FINANCIAL | ) | |
| CORPORATION | ) | |
| d/b/a First American Title | ) | |
| c/o Statutory Agent Lawyers Incorporating | ) | |
| Service | ) | |
| 2710 Gateway Oaks Drive, Suite 150N | ) | |
| Sacramento, CA  95833 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PHILIPS ECG, INC. | ) | |
| (a/k/a Philips Electronics North America | ) | |
| Corporation) | ) | |
| c/o Philips Electronics North America | ) | |
| Corporation | ) | |
| 1251 Avenue of the Americas | ) | |
| New York, NY  10020 | ) | |
| | ) | |
| and | ) | |

Genesee & Wyoming, Inc.                          )
d/b/a Indiana & Ohio Railroad, Inc.              )
c/o Statutory Agent CT Corporation System        )
One Corporate Center                             )
Hartford, CT, 06103-3220                         )
                                                 )
            Third-Party Defendants.              )

---

### DEFENDANT OTTAWA OH, LLC'S AMENDED ANSWER, AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT WITH JURY DEMAND

---

For its Amended Answer to Plaintiff Pandora Distribution, LLC's ("PDL") Complaint, Defendant Ottawa OH, LLC ("Ottawa") states as follows:

1.      Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and denies the same.

2.      Admits.

3.      Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and denies the same.

4.      Admits.

5.      Admits.

6.      Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 and denies the same.

7.      The deed speaks for itself. Ottawa denies that PDL's land is "adjacent" to Ottawa's land. Ottawa denies that its building is a "warehouse," since the building is not now in use. Ottawa admits that it owns land separated from PDL's warehouse by another parcel of land.

8.      Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 and denies the same.

9.     Admits, except to the extent that the term "Ottawa warehouse" is defined by paragraph 1 as being "adjacent" to PDL's land.

10.     Admits that two bridges connect PDL's building with Ottawa's building. Ottawa denies that the bridges are "large" or that they are "conveyors."

11.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and denies the same.

12.     Admits, but denies that the bridges are "conveyors."

13.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and denies the same.

14.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and denies the same.

15.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and denies the same.

16.     Ottawa denies that it is the successor to any of DBI's interests, liabilities, or responsibilities with respect to the Encroachment Agreement. Ottawa denies that it is the successor to DBI with respect to the bridges. Ottawa admits that it purchased land and buildings from DBI in December 2012.

17.     Denies.

18.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and denies the same.

19.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and denies the same.

20.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and denies the same.

21.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 and denies the same.

22.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 and denies the same.

<u>**Count One – Breach of Contract (Ottawa)**</u>

23.     Ottawa incorporates by reference its foregoing responses.

24.     Ottawa admits that PDL's counsel sent Ottawa letters dated October 16, 2011 and January 6, 2012 (although the letter is dated January 6, 2011), which demanded that Ottawa remove the bridges. Ottawa denies the remaining allegations in paragraph 24.

25.     Admits. Ottawa denies that it has any ownership or duty related to the bridges. To the extent that the bridges are on Ottawa's land, Ottawa has acted in good faith to cooperate with any efforts to remove the bridges.

26.     Denies.

<u>**Count Two – Breach of Contract (DBI)**</u>

27.     Ottawa incorporates by reference its foregoing responses.

28.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and denies the same.

29.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and denies the same.

30.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and denies the same.

4

## Count Three – Trespass

31.    Ottawa incorporates by reference its foregoing responses.

32.    Denies.

33.    Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and denies the same.

34.    Ottawa admits that it has refused to remove the bridges from PDL's property. Ottawa denies that it has any obligation or liability with respect to the bridges. To the extent that paragraph 34 asserts a legal conclusion, no response is required.

35.    Denies.

36.    Denies.

37.    Denies.

## Count Four – Declaratory Judgment

38.    Ottawa incorporates by reference its foregoing responses.

39.    Paragraph 39 asserts a legal conclusion, and no response is required. To the extent that any response is required, Ottawa denies the allegations in paragraph 39.

40.    Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 and denies the same.

41.    Denies.

42.    Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and denies the same.

43.    Admits.

44.    Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and denies the same.

45.     Paragraph 45 asserts a legal conclusion, and no response is required. To the extent that any response is required, Ottawa denies the allegations in paragraph 45.

46.     Paragraph 46 asserts a legal conclusion, and no response is required. To the extent that any response is required, Ottawa denies the allegations in paragraph 46.

### Count Five – Relief Pursuant to Ohio Revised Code §§ 5303.01, et seq.

47.     Ottawa incorporates by reference its foregoing responses.

48.     The sections of the Ohio Revised Code speak for themselves. To the extent that paragraph 48 contains any allegations, Ottawa denies them.

49.     Ottawa is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and denies the same.

50.     Denies.

51.     Denies.

52.     Denies.

53.     Denies.

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

PDL's claims, in whole or in part, are barred by the doctrine of laches.

#### SECOND AFFIRMATIVE DEFENSE

PDL's claims, in whole or in part, are barred by the doctrine of waiver and consent.

#### THIRD AFFIRMATIVE DEFENSE

PDL's claims are barred by Ottawa's lack of privity to the Encroachment Agreement on which PDL's claims are based.

### FOURTH AFFIRMATIVE DEFENSE

PDL's claims, in whole or in part, are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

Some or all of PDL's claims fail to state a claim upon which relief may be granted.

### SIXTH AFFIRMATIVE DEFENSE

There is no causal relation between any action by Ottawa and any alleged damage claimed by PDL.

### SEVENTH AFFIRMATIVE DEFENSE

PDL has failed to mitigate any of its alleged damages.

### EIGHTH AFFIRMATIVE DEFENSE

PDL's alleged damages are due, in whole or part, to persons or entities other than Ottawa, including PDL.

### NINTH AFFIRMATIVE DEFENSE

To the extent that the Complaint raises any claims, those are barred, in whole or in part, by the equitable doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

PDL is not entitled to the declaratory relief requested in the Complaint because it has an adequate remedy at law.

### ELEVENTH AFFIRMATIVE DEFENSE

PDL's alleged damages or injuries are the result of its own actions.

### TWELFTH AFFIRMATIVE DEFENSE

PDL has failed to include one or more necessary parties.

### THIRTEENTH AFFIRMATIVE DEFENSE

PDL's Complaint is barred, in whole or in part, by the doctrines of negligence and assumption of the risk.

### FOURTEENTH AFFIRMATIVE DEFENSE

The Encroachment Agreement violates the statute of frauds because its legal description is incomplete and uncertain, and Ottawa did not sign the Agreement.

### FIFTEENTH AFFIRMATIVE DEFENSE

Ottawa had no notice of the Encroachment Agreement and the Encroachment Agreement is not in the chain of title for Ottawa's land.

### SIXTEENTH AFFIRMATIVE DEFENSE

The Encroachment Agreement should be rescinded because of the mutual mistake of the parties.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Ottawa denies all allegations not specifically admitted herein, and reserves the right to amend or supplement these affirmative defenses upon the discovery of new or additional information.

**WHEREFORE**, Defendant Ottawa OH, LLC denies that Plaintiff Pandora Distribution, LLC is entitled to the relief prayed for in the Complaint or any other relief. Ottawa requests that the Complaint be dismissed, that judgment be entered in its favor, and that the Court award its costs in defending this action and all other relief that the Court deems appropriate.

Dated:  July 17, 2013                    Respectfully submitted,


                                         */s/ Gerald R. Kowalski*
                                         Gerald R. Kowalski (0022323)
                                         Sarah K. Skow (0081468)
                                         COOPER & KOWALSKI, LPA
                                         900 Adams Street
                                         Toledo, OH  43604
                                         Telephone:  419-241-1200
                                         Facsimile:  419-242-5675
                                         kowalski@cklpa.com
                                         skow@cklpa.com
                                         *Counsel for Ottawa OH, LLC*

## AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

For its Amended Counterclaim against PDL, Cross-Claim against DBI, and its Third-Party Complaint against First American Financial Corporation d/b/a First American Title ("First American"); Philips ECG, Inc., which merged with Philips Electronics North American Corporation, ("Philips"); and Genesee & Wyoming, Inc. parent company of and d/b/a Indiana & Ohio Railroad, Inc. ("Railroad"), Defendant Ottawa states:

### INTRODUCTION

1.      During the 1980s, Philips owned two buildings in Ottawa, Ohio. The two buildings were on two parcels of land separated by the Railroad's land. Under a license agreement with Grand Trunk Western Railway Company (the Railroad's predecessor in interest), Philips connected the two buildings by erecting two bridges across the Railroad's land.

2.      Philips later sold the two properties to DBI.  The license was not assigned, so Philips still owns the bridges. As owner of the underlying land, the Railroad has a reversion, with a cause of action against Philips under the parties' license agreement for not removing the bridges on demand.

9

3.  In January 2006, PDL bought one of the two properties from DBI. PDL and DBI entered an Encroachment Agreement for PDL's benefit, under which both DBI and PDL asserted rights to the bridges.

4.  In December 2006, Ottawa bought the other Philips warehouse property from DBI. In connection with that sale, DBI promised in writing to disclose all agreements affecting ownership of the property. DBI failed to disclose its Encroachment Agreement with PDL to Ottawa.

5.  Ottawa did not purchase the bridges. In fact, the bridges are described as encroachments by the ALTA survey and by First American's Title Commitment and Title Policy. First American's Title Commitment and Title Policy failed to identify the Encroachment Agreement as an encumbrance on Ottawa's land.

6.  The two buildings are still separated by the Railroad's land and the bridges are still encroaching onto Ottawa's land. DBI, PDL, and Ottawa are and have been prohibited from entering the Railroad's land.

7.  As a result of the bridges' presence and deterioration, Ottawa has experienced and continues to experience losses. Ottawa has demanded that the responsible parties remove the encroachments, but they have failed to do so.

8.  As a result of PDL's claim that Ottawa is liable for the bridges under the Encroachment Agreement, Ottawa has experienced and continues to experience losses. Ottawa submitted its claim for these damages but First American has failed to pay.

9.  This action seeks:

    a.  To determine liability for the encroachments and to order a remedy for the encroachments;

  b.  To determine DBI's liability for its breach of contract in failing to disclose the Encroachment Agreement; and

  c.  To determine First American's liability for bad faith, negligence, and breach of contract in its title work and in its refusal to defend this action.

**PARTIES, JURISDICTION, AND VENUE**

10.  Ottawa OH, LLC is a Delaware limited liability company with its principal place of business in California.

11.  PDL is an Ohio limited liability company, with its principal place of business in Ottawa, Putnam County, Ohio.

12.  DBI is a Nevada limited liability company, with its principal place of business in Dallas, Texas. At all relevant times, DBI conducted business in northwest Ohio.

13.  Third-Party Defendant First American is a California corporation with its principal place of business in Santa Ana, California. At all relevant times, DBI conducted business in northwest Ohio.

14.  Third-Party Defendant Philips is a Delaware corporation with its principal place of business in New York, New York. At all relevant times, DBI conducted business in northwest Ohio.

15.  Third-Party Defendant the Railroad is a Connecticut corporation with its principal place of business in Jacksonville, Florida. At all relevant times, DBI conducted business in northwest Ohio.

16.  Diversity jurisdiction exists under 28 U.S.C. § 1332 because: (i) presently and at the time PDL's Complaint was filed, complete diversity exists between the plaintiff and the defendants, and (ii) the amount in controversy exceeds $75,000.00.

11

17.     Venue is proper under: 28 U.S.C. § 1391(b)(2) because a substantial part of the events on which PDL's Complaint and Ottawa's Counterclaim and Third-Party Complaint are based occurred in the Federal District where the parties' claims are brought.

18.     PDL, DBI, First American, Philips, and the Railroad are subject to the personal jurisdiction of this Court because: (i) the acts complained of in the Complaint, Counterclaim, and Third-Party Complaint occurred in this Federal District, (ii) PDL is a resident of this Federal District, and (iii) PDL, DBI, First American, Philips, and the Railroad conduct or have conducted relevant business in this Federal District.

## FACTS

19.     Ottawa incorporates by reference its answers and affirmative defenses to plaintiff PDL's Complaint.

20.     During the 1980s, Philips owned two buildings in Ottawa, Ohio. The two buildings were separated by land owned by the Railroad.

21.     In 1986, Philips connected its two buildings by constructing two bridges pursuant to a license agreement with the Railroad's predecessor, Grand Trunk Western Railway Company ("License Agreement"). A copy of the License Agreement is attached as Exhibit A and incorporated by reference.

22.     The License Agreement requires that Philips maintain the bridges in "perfect condition" (License Agreement section 2), and it provides the Railroad with the right to demand the removal of the bridges "upon sixty (60) days' previous written notice" (License Agreement section 4).

23.     After Philips stopped production in Ottawa, Ohio, Philips sold both of the properties to DBI.

24.     During the sale to DBI, inquiries were raised about whether there would be an assignment of the License Agreement to DBI. Upon information and belief, the License Agreement was not assignable and was never assigned to DBI.

25.     DBI signed the deed to PDL on January 19, 2006. (See PDL's Deed, attached as Exhibit 1 to PDL's complaint, and incorporated here by reference.)

26.     The next day, on January 20, 2006, PDL and DBI signed the Encroachment Agreement (attached as Exhibit 3 to PDL's complaint, and incorporated here by reference). The deed to PDL was recorded first on January 24, 2006, as instrument 200600000391. The Encroachment Agreement was recorded second on January 24, 2006, as instrument 200600000394.

27.     Under the Encroachment Agreement, the bridges purportedly "remain the sole property of DBI" and DBI specifically agreed that it would remove the bridges upon PDL's demand. The Encroachment Agreement sets forth a full legal description of PDL's land. However, the Encroachment Agreement does *not* contain a legal description of Ottawa's land. The Encroachment Agreement was only recorded in the chain of title to PDL's Warehouse; i.e., the Encroachment Agreement was not recorded in the chain of title to the second parcel retained by DBI.

28.     The Encroachment Agreement was drafted and recorded by First American's agent and representative.

29.     The Encroachment Agreement states that "Pandora will allow the continued encroachment by the conveyors onto its property." The Encroachment Agreement further states that "in the event that Pandora shall ever through lease or purchase acquire that portion of DBI's

property, which is attached by the conveyors to Pandora's property, that said deed or lease shall include the sale or lease of the conveyors."

30.     The Encroachment Agreement shows that both DBI and PDL thought they owned the bridges, and that they wanted to keep the bridges on their land.

31.     After its purchase of the bridges, PDL exercised ownership, dominion, and control of the bridges and the equipment contained in the bridges.

32.     In December 2006, DBI sold the remaining second building and parcel to Ottawa. Ottawa's building and PDL's building remain separated by the Railroad's land. Ottawa's deed provided that the conveyance is "subject to all legal highways, easements, restrictions of use whether apparent and/or of record and is from an actual field survey performed in June, 2006." See Ottawa's Deed, attached as Exhibit 2 to PDL's complaint, and incorporated here by reference.

33.     The Contract of Sale for DBI's sale of the property to Ottawa required an ALTA survey to insure title.  See Contract of Sale, attached as Exhibit B, and incorporated here by reference. The same First American agent and representative who had drafted the Encroachment Agreement drafted the Contract of Sale.

34.     The Contract of Sale required that DBI deliver "Permits, contracts, leases, licenses, commitments and undertakings for the use or upkeep of the Property" and "Debt instruments for all debts secured by the Property." DBI was obligated to disclose the Encroachment Agreement under the Contract of Sale, but it failed to do so.

35.     First American performed the title work on the sale, and issued the title policy ("Title Policy") for Ottawa's land. See Ottawa's First American Policy, attached as Exhibit C, and incorporated here by reference.

36.     The Title Policy, Schedule B, lists certain exceptions from coverage, including:

- o     We have been put on notice that there is a License Agreement between Grand Trunk Railroad Company and Philips ECG, Inc., dated December 18, 1986, relating to the elevated conveyor bridge. (See copy attached.) We find no License Agreement of record. Title Policy, Schedule B, ¶11.

- o     We have been put on notice that there is a License Agreement between Grand Trunk Railroad Company and Philips ECG, Inc., dated December 18, 1986, relating to the elevated conveyor bridge. (See copy attached.) We find no License Agreement of record. Title Policy, Schedule B, ¶12.

- o     We have been informed that there is an encroachment by an existing overhead bridge conveyor onto the premises in question. Title Policy, Schedule B, ¶13.

- o     We have been informed that there is an encroachment by an existing overhead bridge conveyor onto the premises in question. Title Policy, Schedule B, ¶14.

37.     First American failed to attach the License Agreement as indicated by the above references. There is no dispute about whether the bridges encroached onto Ottawa's land, or about the terms of the License Agreement.

38.     First American's title commitment ("Title Commitment"), Schedule B – Section II, includes identical exceptions to those in the Title Policy. First American also failed to attach the License Agreement to the Title Commitment. The Title Commitment is attached as Exhibit D.

39.     Neither First American's Title Policy nor its Title Commitment makes any reference to the Encroachment Agreement, in spite of the fact that the Encroachment Agreement was drafted by First American.

40.     Ottawa had no knowledge of the Encroachment Agreement when it purchased the land and building from DBI.

41.    PDL claims that Ottawa owns the bridges. PDL has demanded that DBI remove the bridges.

42.    In January 2007, Ottawa first learned about the Encroachment Agreement when PDL contacted Ottawa and demanded that Ottawa repair the bridges.

43.    In February 2007, Ottawa presented a written claim to First American based upon the Encroachment Agreement. On or about February 20, 2007, First American acknowledged that it had received and was investigating Ottawa's claim.

44.    PDL filed its Complaint against Ottawa on November 16, 2012.

45.    On February 14, 2013, First American denied Ottawa's request that it defend the current lawsuit and denied coverage.

46.    On or about June 5, 2013, the Railroad's agent and representative sent Philips a letter demanding that Philips remove the bridges and terminating the License Agreement. In its termination letter to Philips, the Railroad indicated that it may remove the bridges pursuant to its rights and obligations under the License Agreement. A copy of the June 5, 2013 letter from the Railroad to Philips is attached as Exhibit E, and incorporated by reference.

47.    As of the date of this filing, the bridges have not been removed and continue to deteriorate, thereby continuing to directly and proximately damage Ottawa's property.

48.    At all relevant times, PDL, DBI, Philips, and the Railroad each exercised ownership, dominion, and control of the bridges, or assumed some obligation or liability for the bridges.

## COUNT I
### Negligence (PDL, DBI, Philips, and the Railroad)

49.    Ottawa incorporates by reference its allegations in paragraphs 1 through 48 of this Counterclaim, Cross-claim, and Third-Party Complaint.

16

50.     Under the Encroachment Agreement, DBI and PDL each assert rights to the bridges, and DBI agrees to maintain the bridges and to remove them upon PDL's demand. Philips owns the bridges. The Railroad owns a reversion in the bridges, and under the License Agreement, the Railroad can compel Philips to remove the bridges.

51.     Philips has a duty to maintain or remove the bridges, and the Railroad has the right to demand such maintenance or removal.

52.     Philips and DBI have breached their duties to maintain or remove the bridges. Upon information and belief, the Railroad is liable for Philips's conduct because the Railroad authorized Philips to build and maintain the bridges on the Railroad's land. Upon information and belief, PDL is liable for DBI's conduct because the Encroachment Agreement was made for PDL's benefit.

53.     The bridges are causing significant damage to Ottawa in a number of ways, including but not limited to:

      a.     by reducing the amount of usable space in the Ottawa's building;

      b.     by physically damaging Ottawa's building; and

      c.     by reducing the value of the Ottawa's property.

<u>**COUNT II**</u>
**Trespass (PDL, DBI, Philips, and the Railroad)**

54.     Ottawa incorporates by reference its allegations in paragraphs 1 through 53 of this Amended Counterclaim, Cross-Claim, and Third-Party Complaint.

55.     Under the Encroachment Agreement, DBI and PDL each assert rights to the bridges, and DBI agrees to maintain the bridges and to remove them upon PDL's demand. Philips owns the bridges. The Railroad owns a reversion in the bridges, and under the License Agreement, the Railroad can compel Philips to remove the bridges.

56.     The presence of the unmaintained bridges on Ottawa's land is an unauthorized and unprivileged tangible invasion of Ottawa's land. Although Ottawa has requested the removal of the bridges, PDL, the Railroad, DBI, and Philips have allowed the bridges to encroach on Ottawa's land.

57.     PDL, DBI, Philips, and the Railroad have unlawfully entered Ottawa's land. PDL, DBI, Philips, and the Railroad's conduct is interfering with Ottawa's exclusive possession of its land.

58.     The bridges are causing significant damage to Ottawa in a number of ways, including but not limited to:

> a.      by reducing the amount of usable space in Ottawa's building;
>
> b.      by physically damaging Ottawa's building; and
>
> c.      by reducing the value of the Ottawa's property.

### COUNT III
### Nuisance (PDL, DBI, Philips, and the Railroad)

59.     Ottawa incorporates by reference its allegations in paragraphs 1 through 58 of this Amended Counterclaim, Cross-claim, and Third-Party Complaint.

60.     Under the Encroachment Agreement, DBI and PDL each assert rights to the bridges, and DBI has the duty to maintain the bridges and to remove them upon demand. Philips owns the bridges.

61.     Under the License Agreement, the Railroad owns a reversion in the bridges, and the Railroad can compel Philips to remove the bridges. PDL, DBI, Philips, and the Railroad have intentionally or negligently failed to maintain the condition of the bridges, creating an unreasonable risk of harm to Ottawa's property.

62.     After a demand by Ottawa for removal of the bridges, Philips, the Railroad, DBI, and PDL have allowed the bridges to interfere with Ottawa's use of its property. PDL, DBI, Philips, and the Railroad have intentionally refused to remove the deteriorating bridges further creating an unreasonable risk of harm and damage to Ottawa's property.

63.     The continued presence of the deteriorating bridges near and on Ottawa's land after a demand for removal unreasonably interferes with, the quiet use and enjoyment of Ottawa's private property. The interference with Ottawa's property rights caused by the bridges is intentional and unreasonable, or it is unintentional but caused by negligent, reckless, or abnormally dangerous conduct.

64.     PDL, DBI, Philips, and the Railroad all have knowledge of the bridges' interference with Ottawa's private property, and all have intentionally allowed the interference to continue to exist.

65.     The bridges' wrongful invasion of Ottawa's property is a private nuisance.

66.     The bridges are causing significant damage to Ottawa in a number of ways, including but not limited to:

      a.      by reducing the amount of usable space in Ottawa's building;

      b.      by physically damaging Ottawa's building; and

      c.      by reducing the value of the Ottawa's property.

### COUNT IV
### Breach of Contract (DBI)

67.     Ottawa incorporates by reference its allegations in paragraphs 1 through 66 of this Amended Counterclaim, Cross-Claim, and Third-Party Complaint.

68.     Ottawa and DBI entered into a written Contract of Sale for the sale of property by DBI to Ottawa. A copy of the Contract of Sale is attached as Exhibit B.

69.     Under the Contract of Sale, DBI was required to deliver to Ottawa "Permits, contracts, leases, licenses, commitments and undertakings for the use or upkeep of the Property." DBI was further required to deliver "Debt instruments for all debts secured by the Property."

70.     DBI failed to deliver the Encroachment Agreement to Ottawa and failed to disclose it in any way.

71.     DBI's breach of contract has proximately and directly caused Ottawa significant damage as detailed above. DBI's breach has further proximately and directly caused Ottawa damage by subjecting Ottawa to the claims made by PDL in this action and by delaying removal of the bridges.

## COUNT V
## Negligence (First American)

72.     Ottawa incorporates by reference its allegations in paragraphs 1 through 71 of this Amended Counterclaim, Cross-Claim, and Third-Party Complaint.

73.     In performing the title work for Ottawa, First American owed Ottawa a duty to competently perform its duties, including in preparing the Title Commitment for the land.

74.     First American breached its duty by negligently performing the title work and by failing to disclose the Encroachment Agreement, prepared by First American, purportedly encumbering Ottawa's land.

75.     First American's wrongful conduct has directly and proximately damaged Ottawa and continues to proximately and directly damage Ottawa as detailed above. First American's conduct has further damaged Ottawa and continues to damage Ottawa by subjecting Ottawa to the claims made by PDL in this action and by delaying removal of the bridges. Those damages were a foreseeable consequence of First American's conduct.

20

<u>C</u>OUNT VI
**Breach of Contract (First American)**

76.     Ottawa incorporates by reference its allegations in paragraphs 1 through 75 of this Amended Counterclaim, Cross-Claim, and Third-Party Complaint as if fully restated herein.

77.     First American's refusal to indemnify and defend Ottawa for its claim related to the bridges was and continues to be a breach of the Title Policy.

78.     As a direct and proximate result of First American's breach, Ottawa has suffered, and will continue to suffer, damages including attorneys' fees and other costs that it has paid or may be required to pay in connection with the loss and claim.

<u>C</u>OUNT VII
**Bad Faith (First American)**

79.     Ottawa incorporates by reference its allegations in paragraphs 1 through 78 of this Amended Counterclaim, Cross-claim, and Third-Party Complaint.

80.     First American refused to accept or deny Ottawa's claim for six years, even though the primary reasons for First American's denial were based on facts that First American knew early in its investigation and First American's drafting the very Encroachment Agreement that serves as the basis for Ottawa's claim.

81.     First American negligently or intentionally misrepresented or failed to disclose to Ottawa the Encroachment Agreement that it had recorded mere months before on PDL's land. First American's failure, without reasonable justification, constitutes bad faith and is a violation of First American's duties of good faith and fair dealing towards its insured.

82.     First American's failure and refusal to indemnify and defend Ottawa for its property damage and its claim based on the Encroachment Agreement in accordance with the term of the Title Policy were not predicated upon circumstances that furnish reasonable

justification and, therefore, constitute bad faith and are violations of First American's duties of good faith and fair dealing toward its insured.

83.      As a direct and proximate result of First American's breach, Ottawa has suffered, and will continue to suffer, damages including attorneys' fees and other costs that it has paid or may be required to pay in connection with the loss and claim. Ottawa is entitled to punitive damages for First American's intentional bad faith.

**COUNT VIII**
**Mutual Mistake (DBI, PDL)**

84.      Ottawa incorporates by reference its allegations in paragraphs 1 through 83 of this Amended Counterclaim, Cross-Claim, and Third-Party Complaint.

85.      Ownership of the bridges was a material aspect of the Encroachment Agreement.

86.      Both DBI and PDL entered the Encroachment Agreement believing that they owned the bridges.

87.      But Philips retained ownership of the bridges.

88.      The Encroachment Agreement should be rescinded because DBI and PDL were both mistaken about their interests in the bridges. Neither DBI nor PDL had any interest in the bridges.

**COUNT IX**
**Declaratory Judgment (First American)**

89.      Ottawa incorporates by reference its allegations in paragraphs 1 through 88 of this Amended Counterclaim, Cross-claim, and Third-Party Complaint.

90.      This action is brought for declaratory judgment pursuant to Ohio Revised Code 2721.01 et seq.

22

91. The claim by PDL that Ottawa is liable under the Encroachment Agreement as a successor-in-title is covered by the Title Policy.

92. In accordance with the Title Policy, Ottawa submitted its claim to First American.

93. First American has denied coverage for Ottawa's losses on the ground that the claim is not covered by the Title Policy.

94. An actual controversy now exists between Ottawa and First American regarding the rights, obligations, and duties of Ottawa and First American with respect to the Title Policy.

95. Accordingly, Ottawa seeks a declaratory judgment that First American is obligated under the Title Policy to cover, subject to any applicable limits of liability, the losses that Ottawa has incurred as set forth in its claim.

96. This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

## COUNT X
### Declaratory Judgment (DBI, PDL, Philips, and the Railroad)

97. Ottawa incorporates by reference its allegations in paragraphs 1 through 96 of this Amended Counterclaim, Cross-Claim, and Third-Party Complaint.

98. This action is brought for declaratory judgment pursuant to Ohio Revised Code 2721.01 et seq.

99. Ottawa did not purchase the bridges from DBI. Ottawa has never assumed any duties, obligations, responsibilities, or liabilities for the bridges.

100. Ottawa believes that Philips and the Railroad own the bridges. Ottawa further believes that DBI, PDL, Philips, and the Railroad are liable and responsible for the bridges.

101. Ottawa is not a party to and is not bound by the Encroachment Agreement.

102.    PDL claims that Ottawa owns the bridges and that Ottawa and DBI are responsible for their removal. See PDL's Complaint Counts One, Two, and Three.

103.    PDL claims that Ottawa is somehow bound by the Encroachment Agreement. See PDL's Complaint, Count One.

104.    An actual controversy currently exists concerning (1) the ownership of the bridges, (2) who is bound by the Encroachment Agreement, and (3) the rights and obligations of the parties for the maintenance and removal of the bridges.

105.    This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

WHEREFORE, Ottawa demands judgment as follows:

a.    a declaration that First American is obligated under the Title Policy to defend and indemnify Ottawa for Ottawa's losses, subject to any applicable limits of liability, as set forth in Ottawa's claim;

b.    a declaration that the bridges are not Ottawa's property;

c.    a declaration that Ottawa is not bound by the Encroachment Agreement;

d.    a declaration that the bridges are Philips's property and that Philips must remove the bridges at its sole expense;

e.    a declaration that, if Philips fails to remove the bridges, that the Railroad is responsible for removing the bridges;

f.    a declaration that neither PDL, DBI, Philips nor the Railroad possess an interest in Ottawa's property and that all trespasses must immediately cease;

g.    an order rescinding the Encroachment Agreement;

h.    an award of compensatory damages jointly and severally against PDL, DBI, Philips, and the Railroad, in excess of $75,000, the exact amount to be determined at the trial of this matter;

i.    an award of compensatory damages against First American, in excess of $75,000, the exact amount to be determined at the trial of this matter;

j.      an award of punitive damages against PDL, DBI, Philips, and the Railroad;

k.      an award of punitive damages against First American for its bad faith;

l.      an award of reasonable attorneys' fees and costs incurred in this suit; and

m.      such other and further relief as the Court may deem just and proper.

Dated:  July 17, 2013                          Respectfully submitted,


                                               */s/ Gerald R. Kowalski*
                                               Gerald R. Kowalski (0022323)
                                               Sarah K. Skow (0081468)
                                               COOPER & KOWALSKI, LPA
                                               900 Adams Street
                                               Toledo, OH  43604
                                               Telephone:  419-241-1200
                                               Facsimile:  419-242-5675
                                               kowalski@cklpa.com
                                               skow@cklpa.com
                                               *Counsel for Ottawa OH, LLC*

## JURY DEMAND

Defendant Ottawa OH, LLC hereby demands a trial by jury.

Dated:  July 17, 2013                          Respectfully submitted,


                                               */s/ Gerald R. Kowalski*
                                               Gerald R. Kowalski (0022323)
                                               Sarah K. Skow (0081468)
                                               COOPER & KOWALSKI, LPA
                                               900 Adams Street
                                               Toledo, OH  43604
                                               Telephone:  419-241-1200
                                               Facsimile:  419-242-5675
                                               kowalski@cklpa.com
                                               skow@cklpa.com
                                               *Counsel for Ottawa OH, LLC*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically this 17th day of July, 2013. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

I also certify that a copy of the foregoing was served this 17th day of July, 2013, by certified mail, return receipt requested, upon: **First American Financial Corporation d/b/a First American Title**, c/o Statutory Agent Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833; **Philips ECG, Inc. (a/k/a Philips Electronics North America Corporation)**, c/o Philips Electronics North America Corporation, 1251 Avenue of the Americas, New York, NY 10020; and **Genesee & Wyoming, Inc. d/b/a Indiana & Ohio Railroad, Inc.**, c/o Statutory Agent CT Corporation System, One Corporate Center, Hartford, CT 06103-3220.

*/s/ Gerald R. Kowalski*
Gerald R. Kowalski
*Counsel for Ottawa OH, LLC*

26