UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Pandora Distribution, LLC.,                                    Case No. 3:12-cv-2858

                    Plaintiff

         v.                                                    ORDER

Ottawa OH, LLC, et al.,

                    Defendants

Ottawa OH, LLC has filed a motion to compel related to a discovery dispute with First

American Title Insurance Company.  (Doc. No. 171).  For the reasons stated below, First American

is ordered to produce the correspondence and documents contained in the privilege log to my

chambers for in-camera review.  (*See* Doc. No. 174-1 at 9-11).

         "In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which

provides a testimonial privilege, and by common law, which broadly protects against any

dissemination of information obtained in the confidential attorney-client relationship."  *State ex rel.*

*Dawson v. Bloom-Carroll Local Sch. Dist.*, 959 N.E.2d 524, 529 (Ohio 2011) (citing *State ex rel. Toledo*

*Blade Co. v. Toledo–Lucas Cty. Port Auth.*, 905 N.E.2d 1221, 1227 (Ohio 2009)).  The statute applies to

communications sought during discovery.  *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*,

937 N.E.2d 533, 538 (Ohio 2010) (quoting *Jackson v. Greger*, 854 N.E.2d 487, 489 n.1 (Ohio 2006));

*see also Martin v. Martin*, 2012-Ohio-4869, 2012 WL 5195816, at *4 (Ohio Ct. App. 2012)

(communications found in documents are protected by the privilege) (citations omitted).  The

attorney-client privilege protects confidential communications seeking legal advice.  *State ex rel. Leslie*

1

*v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 995 (Ohio 2005). A communication is privileged if it "would facilitate the rendition of legal services or advice." *State ex rel. Lanham v. DeWine*, 985 N.E.2d 467, 475 (Ohio 2013) (quotation and citations omitted).

> An attorney may not testify
>
> concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

Ohio Rev. Code § 2317.02(A)(2).

First American asserts the emails between Sprowl and Angelo are covered by the attorney-client privilege. (*See* Doc. No. 175-6 at 6) (asserting the emails involved communications between Sprowl in the role of the company's representative and Angelo in the role of the company's attorney). While Sprowl and Angelo both have ordinary business responsibilities related to processing coverage claims, they also are attorneys, and First American represents they act as attorneys for the company. *See Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 36-37 (D. Mary. 1974) (concluding an individual could play the role of client or attorney depending on the circumstances). Therefore, Ottawa must make a prima-facie showing of bad faith.

"'[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'" *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) (citations omitted). The failure to conduct an adequate investigation may support the conclusion the insurer was not reasonably justified in denying the insured's claim. *Id.*

First American denied Ottawa's claim for defense or indemnification because "at the time it purchased the Property, Ottawa was on notice and had knowledge of the encroachment and that the Property was subject to such an Encroachment Agreement [concerning the overhead bridge

conveyor system].”  (Doc. No. 141-3 at 37).  First American asserted that its title insurance policy excluded coverage for “[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant . . . .” (Id.).

The policy identifies the overhead bridge conveyors as an encroachment.  (Doc. No. 48-3 at 6).  An encroachment is “[a]n infringement of another's rights” or “[a]n interference with or intrusion onto another's property.”  Encroachment, Black's Law Dictionary (10th ed. 2014).  The Encroachment Agreement, however, assigns repair and maintenance responsibilities to Ottawa, as successor to DBI, Inc.’s interest following the sale of one warehouse to Pandora Distribution, LLC.  (Doc. No. 174-7 at 50).

Ottawa asserts it had no knowledge of the Encroachment Agreement at the time it purchased the property and therefore could not have agreed to assume any responsibilities for the overhead bridge conveyors.  Ottawa also asserts that Michael Borer, a First American title agent, performed the title work for several sales involving the adjacent warehouses at issue and also drafted the Encroachment Agreement.  Finally, Ottawa represents “First American told Ottawa that the bridges belonged to someone else and were encroaching onto the property” and that First American “never interviewed or took a statement from Ottawa’s principal, . . . [Pandora’s] principals, . . . [or] DBI.”  (Doc. No. 171-1 at 23-24).

I conclude Ottawa has made a sufficient showing to establish a prima facie case of bad faith through an absence of reasonable justification for the claim denial.  First American is ordered to produce the items identified in its privilege log to my chambers for in-camera review by March 4, 2016.  Ottawa’s motion to compel will be held in abeyance until I have had an opportunity to review the disputed emails.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge