UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Pandora Distribution, LLC,                                    Case No.  3:12-cv-2858

                        Plaintiff

        v.                                                    MEMORANDUM OPINION


Ottawa OH, LLC, et al.,

                        Defendants

## I. BACKGROUND

In the 1970's, Philips' predecessor, Sylvania Electric Products, Inc., owned two parcels of

property in Ottawa, Ohio.  Each parcel had a warehouse and the two parcels were separated by land

owned by the Railroad.  Philips' predecessor connected the two buildings by constructing a

conveyor bridge across the railroad's land, subject to an Easement and License Agreement.  Prior to

1987, Philips's predecessor, Philips ECG, Inc., constructed a second bridge subject to a License

General Form between it and Grand Trunk Western Railway Company.  Philips then sold the two

parcels to DBI.

In January 2006, DBI divided the parcels and sold one to Pandora Distribution, LLC.  As

part of the purchase, the parties entered into an Encroachment Agreement drafted by First

American Title Insurance Co.  This Encroachment Agreement addressed rights to the bridges.

In December 2006, Ottawa bought the other building and land from DBI.  DBI and First

American allegedly promised to disclose all agreements affecting title to the property.  Ottawa alleges

DBI and First American failed to disclose the Encroachment Agreement.

Pandora instituted this litigation in November 2012.  At the initial pretrial with the Court, in

April 2013, Ottawa indicated it was contemplating filing a third-party complaint.  By November

2013, it appeared that all the relevant parties were joined and the parties were referred to Magistrate Judge Knepp for a settlement conference. In April 2014 and following unsuccessful settlement discussions, new deadlines were implemented and I set a trial date in November 2015.

By October 2015, First American and Ottawa presented a significant discovery dispute regarding email communications which was the subject of a formal motion to compel. On October 6, 2016, I granted Ottawa's motion to compel and ordered First American to produce pre-denial email communications.

Subsequent status conferences addressed the issues of mediation and a plan to move the litigation forward. Discovery continued in fits and starts.

At a status conference in March 2017, the vintage of the litigation was discussed and efforts were made to get the litigation back on the discovery track. After getting leave of Court, Pandora filed its Fourth Amended Complaint on April 12, 2017, and Ottawa filed its Second Amended Third-Party Complaint on May 9, 2017.

Pandora's Fourth Amended Complaint alleges claims against Ottawa, DBI, Philips, and its successor, and the Railroad sounding in: (1) breach of contract vs. Ottawa; (2) breach of contract vs. DBI; (3) trespass and nuisance vs. Ottawa; (4) declaratory judgment; (5) quiet title and ejectment vs. Ottawa; (6) breach of contract vs. Philips; (7) declaratory judgment vs. Philips; (8) damages and other relief vs. Philips; (9) negligence vs. Philips; (10) equitable relief vs. Ottawa; and (11) equitable relief vs. the Railroad. (Doc. No. 205).

Ottawa's Second Amended Third-Party Complaint alleges the following claims against First American: (V) negligence; (VI) breach of fiduciary duty; (VII) fraud and constructive fraud; (VIII) breach of contract; (IX) bad faith; and (X) declaratory judgment action.

As noted in my previous order:

> The various claims, cross claims, counterclaims, and third party claims in this lawsuit seek to establish liability for the removal of, and remediation of damage caused by, two conveyor bridges which connect two commercial warehouses in

Ottawa, Ohio. . . . There currently exists a dispute regarding whether, when, and to whom ownership of the conveyor bridges passed.

(Doc. No. 21 at p. 1).

This matter is before me on First American's motions to dismiss as well as Pandora's motion to bifurcate. The matters have been fully briefed by all parties. For the reasons stated below, both motions are denied.

## II. FIRST AMERICAN'S MOTIONS TO STRIKE AND DISMISS

First American moves to strike "the new allegations and purported causes of action set forth in the Second Amended Third-Party Complaint" on the basis that Ottawa "misled the Court to obtain leave to file it and the new and serial allegations and claims are materially prejudicial to First American." (Doc. No. 219 at p. 1).

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of this motion "'avoid[s] the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation omitted). Such motions are disfavored. *Id.* The movant must demonstrate the challenged matter "has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant[ ]." *See* 2 Moore's Federal Practice § 12.37[3] (3d ed. 2017).

At the time Ottawa sought leave to file its Second Amended Complaint, it contended:

> The second amended third-party complaint will comport the allegations with facts that have come to light as a result of recently-discovered information and depositions produced since the Court's order compelling First American to produce that discovery. Permitting Ottawa's second amended third-party complaint will also serve to clarify Ottawa's ten existing counts against First American; no new counts will be added.

(Doc. No. 202).

Having carefully reviewed the Amended (Doc. No. 67) and Second Amended Third-Party Complaints (Doc. No. 212), I find Ottawa alleges the same causes of action and in conjunction with their motion for leave, includes factual allegations based upon recently discovered information. That information came to light after First American was compelled to produce certain discovery.

As I find First American has not met its burden under Rule 12(f), the motion to strike is denied.

First American also seeks dismissal of Ottawa's Second Amended Third-Party Complaint based upon Fed. R. Civ. P. 12(b)(6). That request is premised upon the assumption First American's motion to strike is granted. As I am denying the motion to strike, First American's motion for dismissal is likewise denied.

### III. PANDORA'S MOTION TO BIFURCATE

Pandora moves for bifurcation of the third-party action between Ottawa and First American, requesting those claims proceed on a track separate from the main claims. Ottawa and First American submit vigorous opposition to bifurcation. Defendant Philips suggests that bifurcation might be of value "depend[ing] on which claims are bifurcated and how any outstanding discovery is conducted—both fact and expert."

Fed. R. Civ. P. 42(b) allows for bifurcation "[f]or convenience, to avoid prejudice, or to expedite and economize." As noted by the Sixth Circuit, the motivating factor behind Rule 42(b) "is to enable the trial judge to dispose of a case in a way that advances judicial efficiency and is fair to the parties." *In re Benedectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988).

This is not the first time a party in this litigation has requested bifurcation. In September 2014, third-party First American sought to bifurcate the bad faith claim asserted against it by Ottawa. (Doc. No. 83). At that time, I denied the request to bifurcate as First American's concerns regarding the disclosure of potentially privileged information could be addressed in a properly constructed protective order. I also noted that "[g]iven the number and variety of claims presented in this case by the various parties, there ultimately may be a need for multiple trials. *Without a clearer picture of what claims will proceed to trial*, I am not persuaded First American will be prejudiced by a single trial in this case." (Doc. No. 125 at p. 2). (Emphasis added.)

I do not find Pandora's request for bifurcation any more persuasive at this juncture of the proceedings. It appears there may be overlapping discovery on several fronts and those issues are more appropriate for discussion at a status conference with counsel for all the parties. Once a discovery plan is formulated, it may serve to guide the bifurcation process. Alternatively, it may be better to complete all discovery and dispositive motion practice to see what claims remain before revisiting bifurcation. Again, these are subjects more appropriate for a status conference.

As I do not find Pandora's request for bifurcation to advance judicial efficiency at this stage of the proceedings, I deny the motion for bifurcation without prejudice.

### IV. CONCLUSION

For the reasons stated above, First American's motions to strike and to dismiss (Doc. No. 219) are denied. Pandora's motion to bifurcate (Doc. No. 211) is denied without prejudice.

A telephonic status conference is scheduled for **March 15, 2018 at 9:30 AM** and counsel to call the bridge line at (877) 411-9748, Access Code 1231873. In advance of this conference, counsel for all the parties shall meet and confer to put together a detailed discovery plan for discussion at

that conference.  A joint discovery plan shall be submitted to the Court no later than seventy-two hours before the conference.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge