UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Pandora Distribution, LLC,                                    Case No.  3:12-cv-2858

                         Plaintiff,

        v.                                                   MEMORANDUM OPINION
                                                                  AND ORDER

Ottawa OH, LLC, et al.,

                         Defendants.


## I.     INTRODUCTION AND BACKGROUND

This case involves contract and tort claims regarding two warehouses in Ottawa, Ohio,

owned by Pandora Distribution, LLC, and Ottawa OH, LLC, which are separated on the surface by

railroad tracks operated by Genesee & Wyoming, Inc., but connected by two conveyer bridges.  The

eastern warehouse is owned by Pandora (the "Pandora Property") and the western warehouse is

owned by Ottawa (the "Ottawa Property").  Pandora and Ottawa each purchased their respective

properties from DBI Partners, LLC, in separate transactions.  Ottawa purchased the Ottawa

Property approximately 11 months after Pandora had purchased the Pandora Property.  Pandora

subsequently sued Ottawa and DBI, seeking to require one or both to pay for the removal of the

conveyer bridges.  I previously concluded the conveyer bridges are fixtures which DBI conveyed to

Pandora during the purchase of the Pandora Property.  (*See* Doc. No. 317; Doc. No. 334).

Ottawa has filed a motion for leave to file another motion for reconsideration.[1]  (Doc. No. 336).  In this motion, Ottawa challenges my decision denying its motion for reconsideration of my earlier opinion ruling on summary judgment motions filed by Pandora, Ottawa, Philips Electronics North America Corporation ("Philips"), Genessee & Wyoming, Inc., and First American Title Insurance Company on a variety of claims, counter-claims, and cross-claims.  (Doc. No. 334).  Ottawa asserts my decision violated its due-process rights to notice and an opportunity to be heard.  (Doc. No. 336 at 2).  First American and Philips filed briefs in opposition to Ottawa's motion.  (Doc. No. 337; Doc. No. 339).  Ottawa filed a brief in reply.  For the reasons stated below, I deny Ottawa's motion.

## II.  ANALYSIS

Motions for reconsideration under Rule 59(e) are not intended to give a party "an opportunity to relitigate matters already decided . . . [or to be] a substitute for appeal."  *Turner v. City of Toledo*, 671 F. Supp. 2d 967, 969 (N.D. Ohio 2009) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir.2007)).  "Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge."  *Dana Corp. v. United States*, 764 F. Supp. 482, 489 (N.D. Ohio 1991) (quoting *Durkin v. Taylor*, 444 F. Supp. 879 (E.D. Va. 1977)).  Yet, that appears to be precisely Ottawa's supposition.

Rule 56 expressly incorporates the due-process principles on which Ottawa relies.  Under that Rule, "[a]fter giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant, grant the motion on [legal or factual] grounds not raised by a party, or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f); *see also* Fed. R. Civ. P. 56, 2010 advisory committee note.

---

[1]  (*See* Doc. No. 285; Doc. No. 311; Doc. No. 316; Doc. No. 323)

"The key inquiry is whether the losing party was on notice that he had to muster the necessary facts to withstand summary judgment, lest he face the dismissal of his claims." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) (quoting *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959-60 (6th Cir. 2007)).  In making this inquiry, a court looks to "the totality of the proceedings . . . [and] considers whether the prevailing party moved for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants." *Smith*, 708 F.3d at 829 (quoting *Turcar, LLC v. I.R.S.*, 451 F. App'x 509, 513 (6th Cir. 2011)); *see also Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 822 (6th Cir. 2020).

Ottawa begins with an objection to my remark that "the conveyor bridges between the two warehouses required structural alterations to the outside of the buildings."  (Doc. No. 334 at 6). This unremarkable observation simply alludes to a fact no party has yet disputed in this litigation – that Philips caused someone to create openings in the sides of the warehouses (whether by blowtorch, metal shears, or some other tool) to permit tangible property to be moved from inside the warehouse through the conveyer bridges.  (*See also* Doc. No. 334 at 7-8 (Philips "connect[ed] two buildings it owned through two openings it created in those two buildings . . . .")).  In short, the structure had to be altered in order for the conveyer bridges to serve their intended purpose. Ottawa fails to explain how it might have been unaware of this fact.

Next, Ottawa contends I erred when I concluded exceptions in the title insurance policy First American issued to Ottawa prohibit Ottawa from recovering under that policy.  Ottawa does not attempt to explain how I violated its due-process rights with this conclusion, perhaps implicitly conceding it could not justifiably be surprised by my decision of and ruling on legal and factual grounds Ottawa itself raised.  (*See* Doc. No. 258-1 at 11; Doc. No. 331 at 9-10).   Ottawa asserts nothing more than its conviction that I incorrectly resolved its claims against First American.

Motions for reconsideration are not "a substitute for appeal," *Turner*, 671 F. Supp. 2d at 969, no matter how those motions are framed.

Ottawa then contends it did not have notice that I would reject its attempt to do an end-run around the plain language of the title insurance policy.  (*See* Doc. No. 334 at 17 ("Ottawa seeks to circumvent the plain language of the contract it agreed to by concocting an elaborate story which accuses at least four individuals of engaging in a scheme of constructive fraud beginning over ten months prior to Ottawa's purchase.")).  Ottawa argues I denied it due process by not identifying "any misstatement of fact by Ottawa."  (Doc. No. 336 at 2); (*see also* Doc. No. 338 at 2 ("Not giving notice of specific, intentional misstatement of fact denies due process.")).

This argument arises from an apparent misreading of my opinion.  I did not, at any point, accuse Ottawa of engaging in fraud when it attempted to establish a basis for relief in the face of the contractual language it agreed to before purchasing the Ottawa Property.  I expressed no opinion as to whether the individual factual assertions underlying Ottawa's theory were accurate or inaccurate. What I concluded was that "Ottawa's story must explain why Pandora does not own the conveyor bridges . . . [and] Ottawa and Pandora fail[ed] to show I committed a clear error of law in concluding Pandora owns the conveyor bridges."  (Doc. No. 334 at 17).

Even if Ottawa could show it lacked notice as to any of these points, it cannot make the required showing that it was prejudiced as a result.  *Smith*, 708 F.3d at 830-31 ("In addition to lack of notice, a losing party must also demonstrate that it was prejudiced by the district court's failure to provide an opportunity to respond with more evidence.").  Ottawa already has filed a comprehensive motion for reconsideration of my summary judgment decision.  (*See* Doc. No. 331). Ottawa identifies no additional arguments it might have raised or other evidence it might have produced.  Therefore, Ottawa cannot establish it suffered prejudice.

4

Having addressed these pending matters, I conclude with a matter of prospective import. While Ottawa attempts to characterize First American's opposition brief as "a masterpiece of misdirection," (Doc. No. 338 at 2), it offers no rejoinder to First American's assertion that Ottawa's complaints that "it did not have notice and an opportunity to be heard on *the very arguments Ottawa advanced [in] its own summary judgment briefing*, and continues to seek reconsideration of issues upon which *Ottawa prevailed* on summary judgment, underscore the bad faith and vexatious nature of Ottawa's motion for leave."  (Doc. No. 337 at 3 (emphasis in original)).

The bar for granting a motion for reconsideration is set high.  *See, e.g., Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998).  That bar cannot be reached merely through repeated disagreement with my analysis and conclusions.  As my colleague U.S. District Judge James G. Carr once ruminated, "[t]here is a cost to making me listen to songs of that sort." *Younglove Const., LLC v. PSD Dev., LLC*, 767 F. Supp. 2d 820, 825 (N.D. Ohio 2011).

While disfavored, motions for reconsideration may have utility in reaching the appropriate resolution to litigation.  Therefore, I will not prohibit Ottawa from filing any future motions for reconsideration in this case.  Instead, I will offer a word of warning: if Ottawa files another motion for reconsideration during this litigation and (after evaluating the facts, the parties' arguments, and applicable caselaw) I conclude that motion is frivolous, Ottawa will be sanctioned under Rule 11. Those sanctions will include a fine in an amount up to $2,000 and an order that Ottawa pay all attorney fees incurred by any party in responding to that motion.

### III.   CONCLUSION

For the reasons stated above, I deny Ottawa's motion for leave to file a motion for reconsideration.  (Doc. No. 336).

So Ordered.


s/ Jeffrey J. Helmick
United States District Judge