UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Pandora Distribution, LLC,                                 Case No. 3:12-cv-2858

        Plaintiff,

   v.                                                                         MEMORANDUM OPINION
                                                                                   AND ORDER

Ottawa OH, LLC, *et al.*,

        Defendants.

## I. INTRODUCTION

Plaintiff Pandora Distribution, LLC, seeks entry of sanctions against Defendant Ottawa OH, LLC, for Ottawa's noncompliance with an order issued by Magistrate Judge Darrell A. Clay, as well as an award of compensatory damages, punitive damages, and attorney fees on Pandora's remaining claims. (Doc. No. 371). (*See also* Doc. Nos. 375 & 376). For the reasons stated below, I grant Pandora's motion in part and deny it in part.

## II. BACKGROUND

The United States Court of Appeals for the Sixth Circuit previously summarized the factual and procedural history of this case:

> Railroad tracks separate two warehouses, one owned by Pandora Distribution, LLC, and the other owned by Ottawa OH, LLC. A prior owner had obtained an easement and a license agreement with the Railroad to connect the two warehouses with overhead bridges that span the tracks. But neither Pandora nor Ottawa believed it owned the bridges. . . .
>
> Originally, Sylvania Electric Products, Inc., owned both warehouses as part of one large facility. A railroad line on a 66-foot-wide strip of land bisected the property

from north to south and separated the two warehouses, one of which is on the east side of the tracks and the other on the west.  In 1970, the Railroad sold Sylvania an easement (over and across the 66-foot-wide strip) to construct, use, and maintain an overhead bridge between the two warehouses.  In 1986, the Railroad provided Philips ECG, Inc. (Sylvania's successor) a license for a second overhead bridge.

In 2005, Philips sold the entire facility to DBI Partners, "as is," without caveat or limitation.  This included all the real property, personal property thereon, and attendant property rights and obligations.  There was no specific mention of the bridges, the 1970 Easement, or the 1986 License.

In January 2006, Pandora purchased the warehouse property on the east side of the Railroad strip (the "Pandora Property").  DBI and Pandora executed an "Encroachment Agreement," recorded with the Pandora Property deed in the County Recorder's Office, which says: (1) the two bridges "shall remain the sole property of DBI"; (2) DBI was responsible for maintaining the bridges; and (3) Pandora could demand DBI remove the bridges and repair any resulting damage to the Pandora Property, but DBI could remove them only with Pandora's prior written consent.

In December 2006, Ottawa purchased the warehouse property on the west side of the Railroad strip (the "Ottawa Property").  Ottawa bought the property and everything on it "as is," without caveat or limitation.  So, unlike Pandora's purchase from DBI, there was no agreement concerning ownership or removal of the bridges.  The Encroachment Agreement between DBI and Pandora had not been recorded for Ottawa's parcel (but only for the Pandora Property), so it did not appear on the title search, but Ottawa admits that it had actual knowledge of the bridges.

The same title agent assisted with DBI's purchase from Philips in 2005, and then with DBI's sales to Pandora and Ottawa in 2006.  For each transaction, the agent issued title insurance commitments and policies underwritten by First American Title Insurance Company.

In 2007, Pandora demanded that Ottawa, as the successor to the Encroachment Agreement, repair the bridges.  Ottawa denied responsibility and refused.  In 2012, Pandora sued Ottawa and DBI in federal court under diversity jurisdiction, raising claims under Ohio law.  Pandora obtained a default judgment against DBI. Meanwhile, Ottawa counterclaimed, crossclaimed against DBI, and filed a third-party complaint against First American, Philips, and the Railroad.  Pandora amended its complaint to add Philips.  And First American counterclaimed against Ottawa.

Ultimately, Pandora's claims against Ottawa were for breach of contract for failure to remove the bridges pursuant to the Encroachment Agreement; trespass and nuisance based on Ottawa's alleged ownership of the bridges; declaratory judgment regarding bridge ownership; quiet title and ejectment; and an unspecified remedy in equity, should legal relief be unavailable.  Pandora's claims against Philips were based on Philips's promises to the Railroad—in the 1970 Easement and 1986 License—to remove the bridges when it stopped using them.

> Ottawa's counterclaims against Pandora were for negligence, trespass, nuisance, mutual mistake, and declaratory judgment. Ottawa argued that Pandora purchased the bridges,[1] that Ottawa was the victim of a trespass and nuisance, and that it was not bound by the Encroachment Agreement. Ottawa's claims against Philips and the Railroad were that they had owned the bridges and were therefore responsible. Its claims against First American were based on the title insurance.
>
> When all parties moved for summary judgment, the district court determined that Pandora owned the bridges and entered judgment on all claims except Ottawa's claims against Pandora for negligence, trespass, and nuisance. . . . Pandora and Ottawa each moved for reconsideration, which the district court denied. . . . Ottawa dismissed its remaining claims, and the district court closed the case. Ottawa appealed and Pandora cross appealed.

*Pandora Distribution, LLC v. Ottawa OH, LLC*, No. 21-3127, 2023 WL 335282, at *1-2 (6th Cir. Jan. 20, 2023), *cert. denied,* 144 S. Ct. 378, 217 L. Ed. 2d 204 (2023).

On appeal, the Sixth Circuit concluded that Ottawa, and not Pandora, owns the bridges and reversed my summary judgment rulings in favor of Ottawa on all of Pandora's claims except for its claim for breach of the Encroachment Agreement. *Id.* at *3. The appellate court affirmed my entry of summary judgment against Ottawa in favor of First American, the Railroad, and Philips. *Id.* at *4.

On September 8, 2023, Ottawa filed a petition for a writ of certiorari with the United States Supreme Court. (Doc. No. 365). Ottawa's petition was denied on November 7, 2023. (Doc. No. 366). A few weeks later, I held a telephone status conference with counsel for the parties. During that conference, the parties agreed the case should be referred to Magistrate Judge Darrell A. Clay for a settlement conference. (Doc. No. 367). Counsel for Ottawa, Timothy Fitzgerald, indicated he was unsure if he would continue representing Ottawa upon remand, so I ordered Ottawa to either confirm its current attorney would continue representing Ottawa or obtain new counsel no later than January 15, 2024. (*Id.*).

---

[1] "Ottawa quickly reversed its position. Beginning with its first motion for reconsideration and continuing through this appeal, Ottawa's revised position is that Pandora did *not* purchase and *does not own* the bridges." *Pandora*, 2023 WL 335282, at *2 (emphasis in original).

3

After consulting with counsel, Judge Clay scheduled a settlement conference on February 7, 2024. Judge Clay also ordered the parties to exchange a pre-conference settlement demand and response. Pandora was required to submit "a written itemization of damages and settlement demand to opposing counsel" no fewer than 28 days before the conference, while Ottawa was required to submit a written response no fewer than 21 days before the conference. (Doc. No. 368 at 2-3) (emphasis removed).

Judge Clay further ordered both parties to submit confidential settlement statements of no more than 5 pages by email to his chambers no fewer than 14 days before the settlement conference. (*Id.* at 3). Judge Clay's order also stated that "[a]ny request to reschedule settlement proceedings or excuse the in-person attendance of a named party or representative with ultimate settlement authority must be set forth in a written motion filed no less than [14] days prior to the scheduled proceeding." (*Id.* at 5).

Pandora submitted its settlement demand and damages claim to Fitzgerald on January 10, 2024, as ordered by Judge Clay. (*See* Doc. No. 370). Five days later, on January 15, 2024, Fitzgerald filed a motion to withdraw as counsel for Ottawa. (Doc. No. 369). Fitzgerald represented he notified Stephen Lewis, Ottawa's principal member, of the requirements of Judge Clay's December 12, 2023 settlement conference order, while also stating he had not heard from Lewis since December 1, 2023. (*Id.* at 1-2). Despite the plain terms of Judge Clay's order, Ottawa did not submit a written response to Pandora's settlement demand on January 17, 2024. (Doc. No. 370 at 2).

On January 23, 2024, 14 days before the scheduled conference, counsel for Pandora emailed Pandora's confidential settlement statement to Judge Clay's chambers as required by his order. (Doc. No. 371 at 5). Two days later, counsel for Pandora contacted Judge Clay's chambers to determine whether Ottawa had submitted its settlement statement as required and if the settlement

4

conference would go on as scheduled. (*Id.*). It would not, as Judge Clay learned Fitzgerald had been unable to confirm anyone with settlement authority would personally attend the settlement conference as ordered. (*See* non-document entry dated Jan. 25, 2024).

Pandora then filed a motion for sanctions against Ottawa, arguing "Ottawa has intentionally failed to comply with [Judge Clay's] Order and has willfully obstructed this Court's desire for the parties to engage in settlement discussions," while also causing Pandora to incur legal fees and related expenses in preparing for the settlement conference and in responding to Ottawa's failure to comply with Judge Clay's order. (Doc. No. 371 at 6).

On February 15, 2024, I held a telephone hearing with counsel for Pandora, Fitzgerald, and Lewis concerning Fitzgerald's motion to withdraw and Pandora's motion for sanctions. Lewis represented he had no objection to Fitzgerald's withdrawal, so I granted that motion. Lewis also "requested 60 days in which to obtain new counsel and determine the appropriate next steps in this litigation." (Doc. No. 374 at 1). I granted Lewis' request, ordered Ottawa to obtain new counsel by April 15, 2024, and warned Lewis that the "[f]ailure to comply with this deadline [would] result in the imposition of sanctions, including entry of judgment in Pandora's favor and an award of damages on all remaining claims." (*Id.*).

April 15 came and went with no action or communication from Lewis or anyone else on Ottawa's behalf. Pandora then filed two supplements to its motion for sanctions, which included an itemization of, and arguments for, damages to be awarded in its favor. (Doc. Nos. 375 & 376).

### III.  DISCUSSION

Following the Sixth Circuit's decision on appeal and the subsequent remand of the case back to this court, what remains are Pandora's claims for trespass and nuisance, quiet title and ejectment, and declaratory judgment regarding ownership of the bridges. The Sixth Circuit's conclusion that Ottawa owned the bridges provided, in large part, sufficient factual basis for judgment in Pandora's

5

favor. In referring the case for mediation and providing Ottawa with several opportunities to obtain new counsel, I sought to give the parties space to resolve this case in a practical manner. But Ottawa's repeated failure to comply with court orders leaves only one solution. I previously warned Ottawa that I would enter judgment in Pandora's favor and award damages and sanctions if it failed to obtain new counsel and continue litigating this case.

Ottawa failed to comply, and I now enter default judgment in Pandora's favor on all remaining claims. *See, e.g., Turner v. Whitehorn*, 205 F.3d 1342, at *2 (6th Cir. 1999) (unpublished table decision) (affirming entry of default judgment against defendants after trial court notified defendants they faced sanctions for future noncompliance). *See also* Fed. R. Civ. P. 16(f)(1) (permitting a court to enter default judgment against a party who fails to obey a court order).

### A. COMPENSATORY DAMAGES

Pandora asserts it is entitled to damages for tangible and intangible injuries it suffered due to Ottawa's failure to maintain and remove the bridges. In support of its request for compensatory damages, Pandora offers two affidavits signed by Patrick W. Parks, a member of Pandora Distribution, LLC, as well as a property appraisal report obtained when Pandora listed its warehouse for sale. (Doc. Nos. 375-2 & 376-1).

Ohio law permits a prevailing party in a tort action to recover compensatory damages for both economic and noneconomic losses sustained due to the tortfeasor's wrongdoing. Ohio Rev. Code § 2315.18(B).

Pandora seeks $793,379.69 in compensatory damages, enumerated as follows:

• $11,000.00 in repair costs occasioned by the incursion of Ottawa's bridges into Pandora's building (e.g., roof repairs to address water leaks caused by the bridges), from January 7, 2007 through July 7, 2022 . . .;

• $20,160.00 in lost rental income as a result of unusable space due to the incursion of Ottawa's bridges, from January 7, 2007 through July 7, 2022 (approximately 600 square feet, at $2.10/square foot, yielding $1,260/year);

6

• $160,000.00 for the cost of disconnecting Ottawa's bridges from Pandora's building, plus the associated repairs to the Pandora building, necessitated by the dangerous deterioration of Ottawa's bridges and the related demands of Pandora's tenant;

• $14,716.85 in financing-related charges incurred with Genoa Bank after US Bank refused to renew Pandora's loan because of the incursion of Ottawa's bridges and resulting litigation, necessitating a new loan with Genoa Bank;

• $37,502.84 in additional costs as a result of a 2% prepayment penalty paid to Genoa Bank when Pandora sold its building (the US Bank loan had no such penalty, and therefore this charge would not have been incurred if the loan was not forced to be moved); and

• $550,000.00 of diminution in value to Pandora's property caused by the loss of interested buyers due to Ottawa's bridges and litigation (difference between appraised price of $4.5 million and ultimate sales price of $3.95 million).

(Doc. No. 376 at 3). (*See also* Doc. Nos. 375-2 & 376-1).

I conclude the affidavits and the attached appraisal adequately establish proof of "the physical damage as well as the fundamental inconveniences, both tangible and aesthetic, suffered by" Pandora as the result of Ottawa's years-long trespass onto Pandora's property. *Secrest v. Gibbs*, 2005-Ohio-2074, 2005 WL 1007229, at *6 (Ohio Ct. App. April 29, 2005).

Pandora also seeks additional compensatory damages in the amount of $153,012.15. This amount represents attorney fees and costs Pandora has incurred since this litigation began in 2012. (*See* Doc. No. 375-2 at 2). It is true that some Ohio courts have suggested "Ohio common law allows the prevailing party in a trespass action [to recover] attorney fees as compensatory damages." *Garcia v. Gillette*, 2014-Ohio-1868, 2014 WL 1800429, at *4 (Ohio Ct. App. May 5, 2014) (citing *Payne v. Kerr,* 1986 WL 11028, at *3 (Ohio Ct. App. Sept. 15, 1986), *The Cleveland, Columbus and Cincinnati R.R. Co. v. Bartram,* 11 Ohio St. 457 (Ohio 1860); and *Stevenson v. Morris,* 37 Ohio St. 10 (Ohio 1881)).

But the Supreme Court of Ohio has held in more recent decisions that a court can only award attorney fees as compensatory damages if it first awards punitive damages. *See, e.g., Apel v. Katz,* 697 N.E.2d 600, 603 n.1 (Ohio 1998) ("Attorney fees are potentially recoverable as a part of

7

compensatory damages when punitive damages have been awarded.") (citations omitted); *City of Euclid v. Vogelin*, 90 N.E.2d 593, 596 (Ohio 1950) stating "[c]osts were unknown to the common law" and a party must "establish a statutory right to have his attorney's fees or any other expenses . . . included in the costs taxed"). *See also Victor v. Big Sky Energy, Inc.*, 124 N.E.3d 283, 298 (Ohio Ct. App. 2018) (citing cases for the proposition that, under Ohio law, "an award of punitive damages is necessary to justify attorney's fees") (citations omitted).

Moreover, Pandora has not pointed to any case in which an Ohio court has awarded attorney fees as compensatory damages without a statutory directive or an attendant award of punitive damages. As I explain below, I deny Pandora an award of punitive damages. Therefore, I deny Pandora's motion to the extent it seeks to include attorney fees as a component of the compensatory damages award.

### B. PUNITIVE DAMAGES

Pandora also seeks an award of punitive damages, as well as its attorney fees in connection with a punitive damages award. (*See* Doc. No. 376 at 6).

Ohio law provides, in relevant part, that a court may not award punitive damages against a defendant in a tort action unless the trier of fact has awarded compensatory damages against that defendant and "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud." Ohio Rev. Code § 2315.21(C)(1). "[A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). The plaintiff must present evidence establishing that the defendant "was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the

8

injured party's rights or safety.'" *Blust v. Lamar Advert. Co.*, 813 N.E.2d 902, 912 (Ohio Ct. App. 2004) (quoting *Preston*, 512 N.E.2d at 1176).

Pandora first argues that "Ottawa has by its recent litigation conduct forfeited the right to contest that punitive damages and fees should be awarded." (Doc. No. 376 at 6). But Ohio law places the burden of proof on the plaintiff to demonstrate that punitive damages are appropriate by clear and convincing evidence. Ohio Rev. Code § 2315.21(D)(4). Pandora has not shown that this burden is subject to waiver. *Cf. Favors v. Burke*, 2013-Ohio-823, 2013 WL 871923, at *3-4 (Ohio Ct. App. Mar. 7, 2013) (affirming trial court's denial of plaintiff's request for punitive damages because plaintiff did not offer sufficient evidence to establish malice by clear and convincing evidence during default judgment hearing) (citing *Carr v. Charter Nat'l Life Ins. Co.*, 488 N.E.2d 199 (Ohio 1986)).

Pandora next asserts Ottawa's conduct evidenced a conscious disregard for Pandora's rights and had a great probability of causing substantial harm because Ottawa purchased its warehouse "as is" and knew of the existence of the bridges but failed to acknowledge it owned the bridges and permitted them to deteriorate to the point where Pandora feared the bridges would collapse. (Doc. No. 376 at 6-7).

While I sympathize with Pandora and its long and extensive efforts to remedy the harm it has suffered, I conclude Ohio law prohibits an award of punitive damages in this case. Where, as here[2]:

> the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten per cent of the employer's or individual's net worth when the tort was committed[,] up to a maximum of three hundred fifty thousand dollars.

Ohio Rev. Code § 2315.21(D)(2)(b).

---

[2] (*See* Doc. No. 141-2 at 5-9).

The record does not contain evidence establishing the net worth of either Ottawa or Lewis at the time the trespass was committed. Without this information, I cannot determine whether a punitive damages award would exceed 10% of the Defendant's net worth, as required by § 2315.21(D)(2)(b). Therefore, I must deny Pandora's motion for punitive damages and its associated attorney fees.

### C. SANCTIONS

As I noted above, Pandora moves for sanctions against Ottawa due to Ottawa's noncompliance with two court orders: (1) Judge Clay's December 12, 2023 order scheduling the settlement conference and setting related deadlines, and (2) my February 16, 2024 order requiring Ottawa to obtain new counsel and have counsel file a notice of appearance no later than April 15, 2024.

Rule 16 authorizes a court to "require that a party or its representative be present or reasonably available by other means to consider possible settlement," to refer matters to a magistrate judge, to use "special procedures to assist in resolving the dispute," and to "facilitat[e] in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(1), (2). Further, Rule 16 permits a court to impose sanctions on a party if it "fails to obey a scheduling or other pretrial order," and provides that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(1)-(2). *See also Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir. 1993) ("When confronted with a party's defiance of its management authority, a district court is necessarily vested with considerable discretion in deciding whether to impose sanctions on that party, and, if so, in determining what form the sanctions should take.") (citation omitted).

Prior counsel for Ottawa represents that he informed Ottawa that I referred this case to Judge Clay for a settlement conference and also informed Ottawa of the deadlines and requirements contained in Judge Clay's order. (Doc. No. 369). Ottawa did not comply with those deadlines and forced the cancellation of the settlement conference. (*See* Doc. No. 370); (*see also* non-document order dated January 25, 2024). Additionally, Ottawa failed to comply with my order requiring it to obtain new counsel and proceed with this litigation, despite Lewis' express agreement to the April 15 deadline. (*See* Doc. No. 374).

I already have ordered the entry of default judgment against Ottawa as a sanction for its noncompliance with court orders. In addition, I must order Ottawa to pay Pandora its reasonable expenses, including attorney fees, Pandora incurred because of Ottawa's noncompliance, unless Ottawa shows its failure to comply was substantially justified or that an award of expenses and fees would be unjust. Fed. R. Civ. P. 16(f)(2). Ottawa has not filed any response to any of Pandora's sanctions-related filings and thus has not met its burden to show I should not award attorney fees and costs. Therefore, I conclude Pandora is entitled to an award of reasonable attorney fees.

Courts typically use the "lodestar method" to determine the reasonableness of the fee request, which involves the analysis of "'the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate.'" *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *4 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *aff'd,* 899 F.3d 428 (6th Cir. 2018) (quoting *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005)).

While Pandora has shown its proposed hourly rate is consistent with the "prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984), Sixth Circuit precedent requires me to also review counsel's time records to confirm the hours requested were reasonably expended. *See, e.g., Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 626 (6th Cir. 2020). Therefore, I order

11

Pandora to file the time records relevant to its request for fees on the docket *ex parte*, for my in-camera review.

## IV. CONCLUSION

For the reasons stated above, I grant Pandora's motion for sanctions in part and deny it in part. (Doc. No. 371); (*see also* Doc. Nos. 375 & 376). Pandora shall submit the relevant time records for my review no later than 14 days after the filing of this Memorandum Opinion and Order.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge